# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-1830
_____

Compeer Financial, ACA; Compeer Financial, PCA; Compeer Financial, FLCA

*Plaintiffs - Appellees*

v.

Corporate America Lending, Inc.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 17, 2025
Filed: July 6, 2026
_____

Before LOKEN, LAVENSKI R. SMITH, and KOBES, Circuit Judges.
_____

LAVENSKI R. SMITH, Circuit Judge.

This is an appeal of an arbitration award from a contract dispute stemming from a loan involving a Farm Credit Act loan. Compeer[1] and Corporate America Lending, Inc. (CAL) made the following contract: Compeer agreed to pay CAL $58

---

[1]Appellees Compeer Financial, ACA; Compeer Financial, PCA; and Compeer Financial, FLCA are a set of interrelated federally chartered farm credit associations. We refer to them collectively as Compeer.

million, and in exchange, CAL agreed to pay Compeer all the payments that it was to receive from a set of loans it originated to Famoso Hills Ranch (Famoso). Compeer paid CAL $58 million, but CAL did not make payments to Compeer as promised.

Compeer initiated arbitration proceedings against CAL, alleging, among other things, that CAL breached the agreement. The arbitration panel agreed and issued an award in Compeer's favor. The district court[2] confirmed the award and appointed a receiver to assist Compeer with identifying and recovering CAL's assets to satisfy the arbitration award.

CAL appeals, arguing that the district court erred when it confirmed the arbitration award and appointed a receiver. We affirm.

## I. *Background*

The Farm Credit Act permits authorized institutions, also known as lending associations, to provide borrowers with credit for agricultural production, rural housing, and other farm-related business expenses. These lending associations, which are all chartered by and subject to regulation by the Farm Credit Administration, are geographically limited in their operations. Their articles of association designate the geographical territory that they can serve. The lending associations can only provide credit to borrowers in their chartered territories.

An exception to the local-lending requirement allows lending associations to purchase participation interests in loans originating outside of their chartered territories. For example, a lending association that is not authorized to lend to borrowers in California can purchase a participation interest in a loan to a California farm so long as certain requirements are satisfied. One such requirement is that the

---

[2]The Honorable Jerry W. Blackwell, United States District Judge for the District of Minnesota.

loan was originated by a lending association that is authorized to lend to borrowers in that geographical area.

Compeer and CAL are both federally chartered lending associations. Compeer's chartered territory is comprised of parts of Minnesota, Wisconsin, and Illinois. The Farm Credit Act does not authorize Compeer to lend to businesses in California. CAL, on the other hand, is authorized to lend to California businesses.

Compeer and CAL entered into a master participation agreement (MPA). In it, Compeer agreed to purchase participation interests in agricultural loans that CAL originated in California. The MPA contained an arbitration clause requiring the parties "to submit disputes to binding arbitration on any issue or right created or affected by this Agreement." R. Doc. 3, at 16. The arbitration clause continued that "[t]he prevailing party in an arbitration under this section shall have the right to enter, without contest by the other party, an order reflecting the arbitrator's decision in any court of competent jurisdiction." *Id.* at 17. The MPA also contained a forum-selection clause stating that "[i]n the event of a dispute, the parties agree that venue shall be in Blue Earth County, Minnesota[,] and the parties expressly consent to jurisdiction therein." *Id.* at 19.

CAL originated a set of loans to Famoso. Pursuant to the MPA, Compeer paid CAL $58 million to purchase a 100% participation interest in the Famoso loans. This participation interest obligated CAL to pay Compeer all the payments it was to receive from Famoso. CAL would remain the lender of record and receive a small portion of the monthly payments as servicing fees.

A few years later, Famoso decided to refinance its loans with a different lender. When Famoso reached out to CAL to calculate its repayment amount for the new lender, CAL provided the requested information to Famoso but did not notify

Compeer as the MPA required it to.[3] Famoso refinanced the loan, paying CAL the remaining loan balance of $58,187,976.50 ("Payoff Proceeds"). CAL received the balance and did not promptly remit the Payoff Proceeds to Compeer as the MPA required.[4]

Instead, CAL purposely withheld the Payoff Proceeds from Compeer. According to CAL's CEO Ron Cook, CAL did this as a negotiation tactic to resolve a contract dispute between CAL and Compeer. Whatever its justification for withholding the funds, CAL did not notify Compeer that it received the Payoff Proceeds. On the contrary, Cook and CAL actively concealed Famoso's payment from Compeer. For example, Cook deleted the standing Automated Clearing House (ACH) information that had been used to make ordinary monthly payments on the Famoso loans directly to Compeer. Moreover, after receiving the Payoff Proceeds from Famoso, CAL sent a wire transfer to Compeer for "Famoso May payments," even though the loans had been fully paid off a few days prior and Famoso did not owe a May payment. CAL never notified Compeer that the Famoso loans had been paid off. Compeer became aware that Famoso refinanced its loans because Famoso's new lender sold Compeer a participation interest in the refinanced loan.

Compeer repeatedly asked CAL and Cook to explain their actions. No explanation was provided. Compeer also repeatedly demanded that CAL remit the $58 million Payoff Proceeds, but CAL ignored the demands. CAL eventually claimed that it had been harmed by Compeer and was withholding the Payoff Proceeds to offset damages. CAL did not place the money into escrow despite Compeer's request that it do so.

---

[3]*See id.* at 9 ("[CAL] and [Compeer] agree to communicate to one another in a timely manner all material matters relating to each Participation Loan which come to the attention of the parties, including but not limited to loan payoff information.").

[4]*See id.* at 18 ("Any funds received by [CAL] shall be promptly remitted to [Compeer] following receipt.").

Compeer eventually initiated arbitration proceedings against CAL to protect its interest in the Payoff Proceeds and to recover any additional damages it was entitled to. It commenced emergency arbitration proceedings to preserve the Payoff Proceeds and standard arbitration proceedings to determine the merits of its claims against CAL. Compeer alleged the following claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) conversion, (4) civil theft, (4) unjust enrichment, and (5) money had and received. It also sought relief in federal district court in aid of the arbitration. The federal action sought to require CAL to place the Payoff Proceeds into an escrow account until the arbitration panel reached its decision.

At a status conference before the district court during the pendency of the arbitration proceedings, CAL's counsel represented that CAL possessed the Payoff Proceeds and that he did not have any concerns about the availability of the funds. That same day, Cook submitted a declaration to the district court stating that he was willing to enter into an agreement that preserves the Payoff Proceeds pending the resolution of the arbitration proceedings. Later that day, the district court, relying on Cook's declaration, ordered CAL to place the Payoff Proceeds into an escrow account and submit a detailed report outlining the steps it had taken to preserve the Payoff Proceeds. The order stated that if CAL failed to comply, the arbitrator could recommend that the district court impose sanctions against CAL.

A few days later, the emergency arbitrator issued an interim award adopting the district court's order to preserve the Payoff Proceeds. CAL refused to place the Payoff Proceeds into an escrow account and refused to disclose any steps it had taken to preserve the funds. The emergency arbitrator supplemented its interim award by requiring CAL to provide additional reports on the status of the funds. Again, CAL did not comply. It was eventually represented that CAL had transferred the money to third parties for "investment." CAL later stated that it had retrieved $23 million of the "invested" funds but did not provide any update or documentation regarding the status of the remaining funds. CAL's counsel stated that CAL would place the $23 million into a compliant escrow account, but CAL never did.

Following months of CAL's noncompliance with orders to place the Payoff Proceeds into an escrow account, the emergency arbitrator issued an award of attorneys' fees and costs to Compeer. The emergency arbitrator also recommended that the district court impose sanctions in accordance with its order instructing CAL to preserve the Payoff Proceeds.

After another hearing and more noncompliance from CAL, the district court issued an order stating:

> Despite initial assurances of possession and preservation of the Payoff Proceeds, and despite repeated promises to the Emergency Arbitrator that detailed information would be provided, [CAL] has yet to deliver a reasonable report on the status of the Payoff Proceeds.
>
> Defense counsel acknowledges that [CAL] has not complied with the interim orders, and [CAL's] CEO, who is controlling [CAL]'s position, presently appears more focused on farming obligations no matter the inordinate resources [CAL]'s noncompliance has absorbed. [CAL]'s "cat and mouse" tactics have now defied two decisionmakers and led this [c]ourt to consider appointing a receiver to accomplish the tasks that [CAL] has refused for months. The deadline for compliance has long since passed.

R. Doc. 73, at 6–7 (citation modified). Ultimately, the district court declined to impose sanctions and instead deferred the issue to the merits arbitration panel.

When the merits panel was seated, it bifurcated the arbitration into two phases. Phase I would "address all claims, defenses, and mandatory counterclaims." R. Doc. 80-9, at 3. Then, "[f]ollowing a ruling on Phase I issues," Phase II would address "all remaining issues." *Id.* After several problems related to CAL's failure to comply with orders to place the Payoff Proceed funds into escrow, the merits panel amended its scheduling order to provide that Phase I would address "only those claims asserted by Compeer . . . that relate to the Famoso Loans and their Payoff Proceeds." R. Doc. 117-3, at 3. Phase II would address "[a]ll other claims by Compeer, and all counterclaims of CAL," and "CAL's Affirmative Defense of Offset." *Id.*

The merits panel issued a "Partial Final Award of Merits Panel on Phase I" (Phase I Award), concluding that Compeer was "unconditionally entitled" to receive the Payoff Proceeds and that CAL "had no legal grounds" to withhold the funds. R. Doc. 117-1, at 1, 7. It found for Compeer on its claims for breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. The panel explained that "regardless of CAL's claim that the MPA was illegal, void, and unenforceable, CAL's retention of the Payoff Proceeds is inequitable and unjustly enriches CAL." *Id.* at 8. It ordered CAL to pay $57,146,398.93, plus interest, attorneys' fees, and costs. The merits panel also

> recommended that any [c]ourt confirming and enforcing this Partial Final Award consider and impose any and all actions and relief which may be necessary and appropriate to compel [CAL]'s immediate compliance, including but not limited to the appointment of a receiver to take possession of [CAL]'s documents and assets and to exercise all rights and perform all tasks necessary to effectuate the terms of this Partial Final Award, as well as the Merit Panel's prior Interim Award and Sanctions Order.

*Id.* at 5 (all caps omitted).

Compeer moved to confirm the Phase I Award in district court. CAL opposed, arguing that the merits panel's award was not final and confirmable. CAL also moved to dismiss the district court action for *forum non conveniens*. Following briefing and oral arguments from the parties, the district court denied CAL's motion to dismiss and confirmed the merits panel's award. Ruling on the motion to dismiss, the district court cited section 7.1(c) of the MPA. This section states that a party to the agreement has the right to "enter . . . an order reflecting the arbitrator's decision in any court of competent jurisdiction." R. Doc. 128, at 22 (quoting R. Doc. 3, at 17). The district court concluded that it was a court of competent jurisdiction to enter the order. Ruling on the finality and enforceability of the Phase I Award, the district court explained that the award was final because "[t]he merits panel clearly intended for its partial final award on Phase I to be a final, confirmable award." *Id.* at 44.

The district court also appointed a receiver "to investigate [CAL]'s finances for the limited purpose of identifying and recovering" the Payoff Proceeds. R. Doc. 118, at 2. It first acknowledged that "[a]ppointing a receiver is an extraordinary remedy justified in only extreme situations," but found "that this case presents that type of situation." R. Doc. 128, at 57. Next, the district court analyzed the six factors discussed in *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*,[5] which courts use to decide whether to appoint a receiver. It determined that every factor weighed in favor of appointing a receiver here. The district court ultimately concluded that "CAL's argument that no extreme situation exists to warrant a receiver rings fairly hollow given that CAL's behavior in this [c]ourt and before the arbitrator has been so extremely noncompliant, misleading, and obstructionist that a court-appointed officer has to ensure that orders will be followed." R. Doc. 128, at 61.

CAL appeals the district court's judgments.

## II. *Discussion*

On appeal, CAL argues that the district court erred when it confirmed the merits panel's Phase I Award and appointed a receiver. We disagree.

### A. *Arbitration Award Confirmation*

CAL contends that the district court erred when it confirmed the merits panel's Phase I Award for two reasons. First, it argues that the district court should have declined to confirm the award because the award was not final. Second, CAL argues that even if the award was final and confirmable, the district court should have vacated the award because it violated public policy. We address each argument in turn, reviewing the district court's legal conclusions de novo and its findings of fact for clear error. *Sav-A-Trip, Inc. v. Belfort*, 164 F.3d 1137, 1138 (8th Cir. 1999); *PaineWebber, Inc. v. Agron*, 49 F.3d 347, 350 (8th Cir. 1995).

---

[5]999 F.2d 314, 316 (8th Cir. 1993).

## 1. *Finality of Arbitration Award*

CAL argues that the district court should have declined to confirm the Phase I Award because the award was not final. Generally, a district court may only confirm an arbitration award if it is final. *See Local 36, Sheet Metal Workers Int'l Ass'n, AFL-CIO v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949–50 (8th Cir. 1992) (explaining that federal court jurisdiction is proper when an arbitration award is final); *see also* 9 U.S.C. § 9. "Whether an arbitration award is final depends on '[w]hether the award indicates that it is final and whether the arbitrator intended the award to be final.'" *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., AFL-CIO; UAW, Local 716 v. Trane U.S. Inc.*, 970 F.3d 956, 958 (8th Cir. 2020) (alteration in original) (quoting *Pevely Sheet Metal*, 951 F.2d at 949). And while "[a]n award cannot be final if significant issues still need to be determined," the award "does not have to be final in all aspects" to be confirmable. *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 720 (8th Cir. 1999). Although *Legion Insurance* discussed finality in the context of the *functus officio* doctrine,[6] the same principles of finality apply here. In fact, *Legion Insurance* cited *Pevely Sheet Metal* when explaining what constitutes a final arbitration award. *Id.* at 720 (citing *Pevely Sheet Metal*, 951 F.2d at 949, and discussing the finality of an arbitration award in the context of the *functus officio* doctrine).

*Pevely Sheet Metal* held that the arbitration award was not final because the award "did not purport to be the final, enforceable order unless damages could be agreed on, and the [arbitration panel] specifically retained jurisdiction to determine damages." 951 F.2d at 949. Similarly, *Trane U.S.* concluded that the arbitration award was not final because "[t]he text of the . . . [a]ward indicate[d] it was not the final award" and the arbitrator retained jurisdiction to resolve disputes concerning the terms of the award. 970 F.3d at 958–59. There, a later dispute arose regarding damages which the arbitrator resolved in a subsequent award. Thus, in both cases,

---

[6]"The doctrine of *functus officio* prevents arbitrators from revisiting a final award after the final award has been issued." *Id.* at 719.

the arbitrator issued an award that determined liability but retained jurisdiction to determine issues related to damages.

Here, the Phase I Award was final and confirmable. Indeed, the merits panel signaled its finality intention for the Phase I Award by providing recommendations to the future court tasked with confirming the award. *See* R. Doc. 117-1, at 5 ("It is recommended that any [c]ourt confirming and enforcing this Partial Final Award . . . ." (all caps omitted)). And although the panel retained jurisdiction over this matter like in *Pevely Sheet Metal* and *Trane U.S.*, it did so to address claims and counterclaims that were independent of Compeer's claims related to the Payoff Proceeds. As the panel noted in the Phase I Award, CAL "was permitted to assert all relevant affirmative defenses to the claims addressed in Phase I." R. Doc. 117-1, at 3. The finality and confirmability of the Phase I Award is unaffected by CAL's choice not to avail itself of the opportunity to present its defenses. The panel explained that

> [CAL] was given full opportunity to present its illegality defense and to challenge [Compeer]'s request for damages. . . . [CAL] did not avail itself of that hearing opportunity, electing instead to call no witnesses and limiting itself to the cross examination of [Compeer]'s witness. [CAL] clearly waived any opportunity to present any further evidence on the illegality of the MPA or on damages requested by [Compeer].

*Id.* at 9. The only defense that the panel deferred to Phase II—CAL's set off defense—was deemed "duplicative of [CAL]'s counterclaims" and "independent of and not a valid defense to the Phase I claim for remittance of the Payoff Proceeds." *Id.* at 3. Thus, unlike in *Pevely Sheet Metal* and *Trane U.S.*, the Phase I Award completely determined liability *and* damages on Compeer's claims concerning the Payoff Proceeds; that is, there were no more significant issues for the panel to determine.

Accordingly, the district court did not err when it concluded that the Phase I Award was final and confirmable.

## 2. *Public Policy*

CAL argues that the district court should have vacated the Phase I Award because it violated public policy. "Although we review de novo the district court's legal conclusions, we provide an extraordinary level of deference to the underlying arbitration award." *Medicine Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 488 (8th Cir. 2010) (citation modified). "The Federal Arbitration Act (FAA), 9 U.S.C. §§ 9–11, provides judicial review to confirm, vacate, or modify arbitration awards." *Id.* The FAA states that

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . then at any time within one year after the award is made any party to the arbitration may apply . . . for an order confirming the award, and thereupon the court *must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title*.

9 U.S.C. § 9 (emphasis added). Section 10 states that the district court may vacate an award upon the application of a party to the arbitration for any of the following reasons:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10.

As we expressed in *Medicine Shoppe*, the Supreme Court declared in *Hall Street Associates, L.L.C. v. Mattel, Inc.*[7] that "an arbitral award may be vacated only for the reasons enumerated in the FAA." *Medicine Shoppe Int'l*, 614 F.3d at 489. "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.* (quoting *Hall Street*, 552 U.S. at 587.).

CAL contends, however, that despite *Hall Street* and *Medicine Shoppe*'s directives, reviewing courts can still vacate arbitration awards that violate public policy. Public policy is not a reason enumerated in § 10 of the FAA. Nonetheless, CAL argues that we should vacate the Phase I Award because it enforces the MPA which, according to CAL, makes Compeer a direct lender outside of its federally chartered territory. CAL contends that this arrangement violates the Farm Credit Act and, consequently, public policy. In short, CAL asserts that it should not be required to pay Compeer for breaching a contract that violates public policy. Compeer responds that courts may no longer vacate arbitration awards for violating public policy post-*Hall Street*.

To be sure, courts reviewing arbitration awards have vacated the award on public policy grounds. But this narrow "public policy" exception has only been applied when the public policy is "well defined and dominant." *Meridian Med. Techs., Inc. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union No. 688*, 158 F.4th 924, 931 (8th Cir. 2025) (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum, & Plastic Workers*, 461 U.S. 757, 766 (1983)). Some circuits have continued to apply this exception post-*Hall Street*. *See, e.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) ("[A]fter *Hall Street Associates*, manifest disregard of the law remains a valid ground for vacatur because

---

[7]552 U.S. 576 (2008).

it is a part of § 10(a)(4).").[8] Other circuits have concluded that *Hall Street* eliminates the exception. *See, e.g.*, *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1324 (11th Cir. 2010) (declining to apply the public policy exception because "our judicially-created bases for vacatur are no longer valid in light of *Hall Street*"); *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009) ("The question before us now is whether, under the FAA, manifest disregard of the law remains valid, as an independent ground for vacatur, after *Hall Street*. The answer seems clear. *Hall Street* unequivocally held that the statutory grounds are the exclusive means for vacatur under the FAA.").

This court has not yet addressed whether the public policy exception survived *Hall Street*,[9] nor must we today.[10] Even if the MPA violates public policy, the merits panel concluded that Compeer was entitled to the Payoff Proceeds for reasons independent of CAL's breach of the MPA. Notably, the panel granted Compeer's alternative claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. The panel explained that "if [CAL] were correct that the MPA was illegal, void, and unenforceable, then these non-contractual claims would not be precluded by a governing contract and would provide an independent basis for [Compeer]'s recovery of damages." R. Doc. 117-1, at 8. It continued that "regardless of CAL's claim that the MPA was illegal . . . CAL's retention of the Payoff Proceeds is inequitable and unjustly enriches CAL" and "that CAL, in retaining, dissipating and failing to remit the Payoff Proceeds has breached" the implied covenant of good faith and fair dealing. *Id.*

---

[8]We recognized "manifest disregard for the law" as an "extremely narrow" non-statutory exception in *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001).

[9]We acknowledge that we have considered public policy challenges post-*Hall Street* in cases where the propriety of doing so was not raised by either party. *See, e.g.*, *Meridian Med. Techs.*, 158 F.4th at 931–32.

[10]Nor does this decision address the viability of any other non-statutory ground for vacatur.

CAL argues that if we find one part of the arbitration award defective, we must vacate the entire award. In support of this contention, CAL cites *Stark v. Sandberg, Phoenix & von Gontard, P.C.*[11] and *Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*[12] Specifically, CAL relies on the following quote in each case from *Legion Insurance Co. v. VCW, Inc.*: "[T]he district court must take the award as it finds it and either vacate the entire award using section 10 or modify the award using section 11." 198 F.3d at 721. Considered in context, that quote supports the rule that a reviewing court may not vacate part of an award "when a panel by the language it uses makes clear that it intends its award to be indivisible." *Id.*

Here, CAL's asserted "all or nothing" rule is inapplicable. We are not vacating part of the award. Instead, we are confirming the entire award because any potential public policy violation was harmless. *See Balvin v. Rain & Hail, LLC*, 943 F.3d 1134, 1139 (8th Cir. 2019) (concluding that "even if the arbitrator did exceed his powers by making a good farming practices determination, the error is harmless because he did not exceed his powers in denying Balvin's claim based on the appraised value of Balvin's crop"). Even if part of the Phase I Award violates public policy, the merits panel concluded that Compeer is entitled to the Payoff Proceeds on alternative grounds that do not violate public policy.[13]

Accordingly, the district court did not err when it declined to vacate the Phase I Award on public policy grounds.

---

[11]381 F.3d 793 (8th Cir. 2004).

[12]334 F.3d 721 (8th Cir. 2003).

[13]Compeer's claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment are unaffected by the alleged unenforceability of the MPA. Indeed, Compeer's alternative claims for equitable relief can only survive if a valid contract does not exist. *See U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) ("[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract.").

B. *Appointment of Receiver*

CAL also contends that the district court erred when it appointed a receiver for two reasons. First, it argues that the district court's order appointing a receiver violates the MPA's forum-selection clause. Second, CAL argues that the district court appointed the receiver prematurely. We address each argument in turn, reviewing the district court's decision for abuse of discretion. *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 970 (8th Cir. 2012) ("We review the district court's decision to enforce a forum selection clause for an abuse of discretion."); *Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 981 (8th Cir. 2020) ("We review the appointment of a receiver for abuse of discretion."). "A district court abuses its discretion when it applies an incorrect legal standard." *Lauer v. Barnhart*, 321 F.3d 762, 764 (8th Cir. 2003).

1. *Forum-Selection Clause*

The MPA's forum-selection clause states that "[i]n the event of a dispute, the parties agree that venue shall be in Blue Earth County, Minnesota[,] and the parties expressly consent to jurisdiction therein." R. Doc. 3, at 19. CAL contends that because there is no federal court in Blue Earth County, Minnesota, the district court should have dismissed for *forum non conveniens*. *Cf. Bartels by and through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 676 (4th Cir. 2018) ("Because there is no federal court in Franklin County, the plain language of the forum-selection clause precludes removal [to federal court].").

The MPA's general forum-selection clause, however, is inapplicable here. Instead, the district court's appointment of a receiver is governed by the more specific language in the MPA's arbitration clause. *See Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 255 (8th Cir. 1994) (explaining that under Minnesota law, "[t]he specific terms of a contract govern over the general in the event of conflict"). The relevant language of the arbitration clause states that "[t]he prevailing party in an arbitration under this section shall have the right to enter, without contest by the other party, an order reflecting the arbitrator's decision in any court of

-15-

competent jurisdiction." R. Doc. 3, at 17. The clause's unambiguous language lists three requirements for its application: (1) the party requesting the court to issue an order must have prevailed in arbitration, (2) the order must reflect the arbitrator's decision, (3) the court issuing the order must be one of competent jurisdiction. Here, all three requirements are satisfied.

First, as we explained above, Compeer prevailed in Phase I of the arbitration, which constitutes a final, confirmable award. Second, the district court's order appointing a receiver reflects the arbitrator's decision. The arbitrator's Phase I Award granted Compeer's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment; instructed CAL to pay Compeer damages, attorneys' fees and costs, and fees and expenses related to the arbitration; and

> recommended that any [c]ourt confirming and enforcing this Partial Final Award consider and impose any and all actions and relief which may be necessary and appropriate to compel [CAL]'s immediate compliance, including but not limited to the *appointment of a receiver to take possession of [CAL]'s documents and assets and to exercise all rights and perform all tasks necessary to effectuate the terms of this Partial Final Award*, as well as the Merit Panel's prior Interim Award and Sanctions Order.

R. Doc. 117-1, at 5 (all caps omitted) (emphasis added).

Following the merits panel's Phase I Award, the district court held a hearing addressing several issues, including whether it should appoint a receiver. After considering the parties' briefs and oral arguments, the district court appointed a receiver. The district court raised the receivership issue "[b]ased on the merits panel's recommendation." R. Doc. 128, at 57. Moreover, the district court appointed the receiver "for the limited purpose of identifying and recovering" "the Payoff Proceeds, and any funds, accounts, or property into which those proceeds were deposited, transferred, or otherwise commingled, or which may be lawfully recovered in satisfaction of the arbitration awards confirmed by [the district]

[c]ourt." R. Doc. 118, at 2. The district court's order appointing a receiver undoubtedly reflects the portion of the Phase I Award recommending that the court "impose any and all actions and relief which may be necessary and appropriate to compel [CAL]'s immediate compliance, *including . . . the appointment of a receiver*." R. Doc. 117-1, at 5 (emphasis added).

To be clear, the applicable MPA clause authorizes a court of competent jurisdiction to enter an order *reflecting* the arbitrator's decision, not just confirming the arbitrator's award. *See* R. Doc. 3, at 17. Here, the arbitrator's decision recommended remedies to assist the district court and Compeer with effectuating its award. The district court's order appointing a receiver aligns with that decision.

Third and finally, the district court is a court of competent jurisdiction. It had diversity jurisdiction due to the citizenship of the parties, 28 U.S.C. § 1332, and was empowered to confirm and enter judgments upon arbitration awards pursuant to the FAA, 9 U.S.C. § 9 (instructing that if an agreement does not specify which court can confirm an arbitration award, "then such application may be made to the United States court in and for the district within which such award was made").

Accordingly, the district court did not err when it denied CAL's motion to dismiss for *forum non conveniens*.

### 2. *Necessity of Receiver*

CAL argues that even if the district court had the authority to appoint a receiver, it did so prematurely. In a diversity case such as this one, the appointment of a receiver is governed by federal law and equitable principles. *Aviation Supply*, 999 F.2d at 316.

> A receiver is an extraordinary equitable remedy that is only justified in extreme situations. Although there is no precise formula for determining when a receiver may be appointed, factors typically warranting appointment are [1] a valid claim by the party seeking the appointment; [2] the probability that fraudulent conduct has occurred

-17-

or will occur to frustrate that claim; [3] imminent danger that property will be concealed, lost, or diminished in value; [4] inadequacy of legal remedies; [6] lack of a less drastic equitable remedy; [7] and likelihood that appointing the receiver will do more good than harm.

*Id.* at 316–17.

In *Aviation Supply*, the plaintiff obtained a judgment against RSBI Aerospace, Inc. (RSBI) and Barber, RSBI's owner and president. Following Barber's post-judgment deposition in which Barber refused to discuss his financial condition, Barber's counsel produced his financial statement and represented that Barber's financial condition had not substantially changed since the statement date. The plaintiff accepted Barber's counsel's offer and advised the district court that the discovery dispute was resolved. But the plaintiff moved for a receiver after Barber's counsel reported that Barber had made major asset transfers. A few days later, Barber attempted to encumber his assets to avoid their use for satisfaction of the judgment. The district court appointed a receiver "concluding that a receiver is necessary for the protection and preservation of the rights of ASC, which has no adequate remedy at law." *Id.* at 316 (citation modified). The receiver was to "take possession of Barber's property, to convert that property into money after receiving permission of the court, and to deposit all funds into a trust account." *Id.* (citation modified).

On appeal, Barber argued that the district court erred when it appointed a receiver because none of his actions had proven fraudulent and alternative remedies were adequate to protect the plaintiff's claim. We affirmed the district court's decision concluding that "[i]t is well settled that proof of fraud is not required to support a district court's discretionary decision to appoint a receiver," and alternative remedies "ha[ve] proved unavailing" to the plaintiff. *Id.* at 317. We emphasized that the plaintiff had pressed for discovery to learn more about Barber's finances but was provided with an inaccurate financial statement followed by questionable asset transfers. We explained that "the district court was well within its discretion in turning to a drastic remedy such as a receiver." *Id.*

Similarly, the district court here was well within its discretion in appointing a receiver. First, the factors discussed above support the district court's decision. Compeer has a valid claim to the Payoff Proceeds following the Phase I Award. There is a high probability that fraudulent conduct has occurred or will occur to frustrate Compeer's claim based on Cook's attempts to conceal CAL's receipt of the Payoff Proceeds, Cook's mishandling of the funds after he received them, and Cook's lack of transparency regarding the funds. There is imminent danger that the Payoff Proceeds will be concealed, lost, or diminished in value based on Cook's previous concealment of the funds. Legal and equitable remedies have proved inadequate based on Cal and Cook's failure to comply with the district court's and the arbitrator's orders to preserve the funds. And it is likely that the receiver will do more good than harm given its limited purposes related to the Payoff Proceeds.

Moreover, this case is factually similar to *Aviation Supply* where we affirmed the district court's appointment of a receiver. Notably, like in *Aviation Supply*, alternative remedies have proved unavailing; the debtor company's top decision-maker has provided inaccurate or incomplete information regarding the funds at issue; and funds were transferred, likely to avoid payment obligations.

Ultimately, as the district court explained, "CAL's argument that no extreme situation exists to warrant a receiver rings fairly hollow given that CAL's behavior in this [c]ourt and before the arbitrator has been so extremely noncompliant, misleading, and obstructionist that a court-appointed officer has to ensure that orders will be followed." R. Doc. 128, at 61.

Accordingly, the district court did not appoint the receiver prematurely.

### III. *Conclusion*

For these reasons, we affirm the district court's judgments.

————————————